*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2183**

State of Minnesota,
Respondent,

vs.

Lisa Susan Decker,
Appellant.

**Filed December 14, 2015
Affirmed
Minge, Judge***

Dakota County District Court
File No. 19HA-CR-13-2944

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Heather D. Pipenhagen, Assistant County
Attorney, Hastings, Minnesota (for respondent)

Julie Loftus Nelson, Nelson Criminal Defense & Appeals, PLLC, Minneapolis,
Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Smith, Judge; and Minge,

Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**MINGE**, Judge

Appellant Lisa Susan Decker challenges her convictions of aiding and abetting first-degree controlled substance crime, aiding and abetting third-degree controlled substance crime, and aiding and abetting fifth-degree controlled substance crime, arguing that the district court committed plain error by failing to properly instruct the jury on accomplice liability. We affirm.

## FACTS

On July 9, 2013, police searched Decker's home where she lived with her boyfriend, Charles Erdmann, and her two children. Police found a significant quantity of controlled substances in the master bedroom used by Decker and Erdmann. On her side of the bed, police found her purse containing over three grams of methamphetamine and a plastic bag containing more than half a gram of methamphetamine. On the far side of the bedroom, police found a leather bag containing 90.2 grams of methamphetamine. In the bathroom located within the master bedroom, police found drug paraphernalia, a digital scale, hallucinogenic mushrooms, and small amounts of cocaine and methamphetamine.

In a statement to police, Decker admitted that she and Erdmann used the master bedroom together. She identified their respective sides of the bed. She denied knowing drugs were in the home but said she knew Erdmann was a drug addict and had suspected "for quite some time" he was also a drug dealer. She also said that she knows Erdmann carries methamphetamine in and out of the house.

Both Erdmann and Decker were charged with controlled-substance offenses. Erdmann was tried first and convicted. At Decker's trial, Erdmann testified that he had been using and selling illegal drugs in the home, that all the drugs in the home belonged to him, that when police entered the home he was in the master bedroom using drugs, that when he heard police enter the home, he grabbed methamphetamine from the nightstand and shoved it into Decker's purse, and that he then went into the bathroom and began flushing the toilet as a distraction.

Erdmann further testified that Decker knew that he was using drugs, but was not using drugs herself, and that he did not believe that Decker knew that he either was selling drugs out of the home or had over 90 grams of methamphetamine in their bedroom. Erdmann testified that he was still in a romantic relationship with Decker. The record indicates that he winked at Decker when he entered the courtroom.

A jury found Decker guilty of aiding and abetting first-degree possession of a controlled substance, Minn. Stat. §§ 152.021, subd. 2(a)(1), 609.05, subd. 1 (2012); aiding and abetting third-degree possession of a controlled substance, Minn. Stat. §§ 152.023, subd. 2(a)(1) (2012), 609.05, subd. 1; and aiding and abetting fifth-degree possession of a controlled substance, Minn. Stat. §§ 152.025, subd. 2(a)(1) (2012), 609.05, subd. 1. The district court adjudicated Decker guilty of the first-degree controlled substance offense and sentenced her to 104 months in prison.

## DECISION

The issue raised by Decker in this appeal is whether the district court plainly erred in its jury instruction on accomplice liability. Because the conviction and sentencing are

only for the first-degree offense, we consider the instructions on that charge. The statute provides that one is guilty as an accomplice if one "intentionally aids, advises, hires, counsels, or conspires with" another to commit a crime. Minn. Stat. § 609.05, subd. 1. Our caselaw requires that to convict, the state must prove "(1) that the defendant knew that his alleged accomplices were going to commit a crime, and (2) that the defendant intended his presence or actions to further the commission of that crime." *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (quotations omitted).

With respect to the controlled-substance crime in the first degree, the district court charged the jury as follows:

> [t]he Statutes of Minnesota provide that whoever intentionally aides, advises or conspires with another or others to unlawfully possess one or more mixtures of a total weight of twenty-five grams or more containing cocaine or methamphetamine, is guilty of a crime. The elements of a Controlled Substance [crime] in the First Degree are first, the defendant intentionally aided, advised or conspired with another or others to knowingly possess one or more mixtures of a total weight of 25 grams or more containing cocaine or methamphetamine.

The district court then proceeded to define "possess" as follows:

> the defendant possessed cocaine or methamphetamine if it was in a place under the defendant's exclusive control to which other people did not normally have access or if found in a place to which others had access, defendant knowingly exercised dominion and control over it.

Next, the district court instructed the jury that to find Decker guilty it had to determine that she "knew or believed that the substance possessed was cocaine or methamphetamine."

4

Before completing its charge to the jury, the district court added the following general accomplice instruction:

> A defendant is guilty of a crime committed by another person when the defendant has intentionally aided the other person in committing it or has intentionally advised, hired, counseled, or otherwise procured the other person to commit it. A defendant is guilty of a crime however only if the other person commits a crime. The defendant is not liable criminally for aiding, advising, hiring, counseling or conspiring or otherwise procuring the commission of a crime unless some crime is actually committed.

This language is taken from an out-of-date criminal jury instruction guide (CRIMJIG). The current CRIMJIG has been updated to clearly set forth the knowledge and intent requirements as articulated in *Milton*. *Compare* 10 *Minnesota Practice*, CRIMJIG 4.01 (2006), *with* 10 *Minnesota Practice*, CRIMJIG 4.01 (Supp. 2014-15).

On appeal, Decker argues that because the *Milton* requirements were not clearly articulated to the jury, we must reverse. However, Decker did not object to the jury instruction as given. Therefore, we review for plain error. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Plain error is (1) error, (2) that is plain, and (3) affects the defendant's substantial rights. *Id.* A defendant's substantial rights are affected if the error was prejudicial. *Id.* at 741. Prejudicial error is present when "there is a reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury." *Id.* (quotation omitted). If all three elements are met, we must determine whether we "should address the error to ensure fairness and the integrity of the judicial proceedings." *Id.* at 740.

The state concedes that because the district court's general accomplice liability instruction does not follow *Milton* and the current jury-instruction guide, there is error that is plain. But the state argues that when the district court's jury instructions are read as a whole, they make a finding of guilt more difficult, are actually favorable to Decker, and, therefore, did not affect her substantial rights. To evaluate this issue, we consider the set of instructions for the first-degree offense.

In the accomplice-to-the-first-degree-offense instruction, the district court's language quoted above requires the jury to find knowing possession. This requirement is a result of the use of the words "to knowingly possess one or more mixtures of a total weight of 25 grams," followed by the definition of possession and the requirement that "the defendant knew or believed that the substance possessed was cocaine or methamphetamine." Thus, to find Decker guilty, the jury had to find that she knowingly and actually or constructively possessed 25 grams of cocaine or methamphetamine. Under the district court's instructions, the jury also had to find that Decker intentionally aided, advised, or conspired with Erdmann to possess the required controlled substance in the required amount for each offense. The district court's instructions define intentionally as meaning "the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause the result." In sum, rather than just requiring the jury to find that Decker knew Erdmann possessed the controlled substance and that Decker's presence or actions were intended to further his possession, the instructions require that Decker knowingly and actually or constructively possessed the substance and that she aided, advised, or conspired with

6

Erdmann with the intent of furthering the crime. This goes beyond the requirements of the *Milton* ruling.

Decker argues that the jury's questions during deliberations were focused solely on accomplice liability, not constructive possession. The jury submitted three questions to the district court. Each time, after conferring with the prosecutor and defense counsel, the district court referred the jury back to the instructions as originally given. The jury's questions do not indicate, as Decker suggests, that the jury was concerned only with accomplice liability. The jury's questions indicate that it was considering the level of knowledge required for constructive possession as well as whether Decker intentionally aided Erdmann in possessing the controlled substance.

The issue in our case is similar to that in *State v. Bahtuoh*, in which the district court failed to "expressly instruct the jury on the two components of the mental state required for accomplice liability." 840 N.W.2d 804, 812 (Minn. 2013). The district court incorporated an accomplice liability instruction into its instruction on the offense of first-degree murder and gave the jury a separate instruction on accomplice liability that did not include the *Milton* requirements. *Id.* at 812, 814. The *Bahtuoh* jury was instructed, in part, that to find the defendant guilty they had to find that "the defendant, acting alone or intentionally aiding and abetting another, acted with the intent to kill Kyle Parker." *Id.* at 814. Our supreme court determined that this instruction heightened the state's burden of proof by actually requiring that Bahtuoh possess an intent to kill. *Id.* at 813-14. The supreme court held that "any error favored Bahtuoh and therefore did not affect his substantial rights." *Id.* at 815 n.1 Similarly, in the instant case, the district court's

instructions required the jury to find both that Decker possessed the controlled substance and that she intentionally aided, advised, or conspired with another to possess the controlled substance.

We conclude that although the district court's failure to properly instruct the jury on the required mental state for accomplice liability was plain error, the error did not affect Decker's substantial rights.

**Affirmed.**